UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OXFORD GLOBAL RESOURCES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ONPOINT HEALTHCARE SOLUTIONS, INC. and BRIAN LASCH,<br><br>Defendants. | Case No.: 18-cv-0425-WQH-BLM<br><br>**ORDER** |

HAYES, Judge:

    The matter before the Court is the Motion for Preliminary Injunction (ECF No. 13) filed by Plaintiff Oxford Global Resources, LLC.

**I.    Background**

    On February 23, 2018, Plaintiff Oxford Global Resources, LLC ("Oxford") initiated this action by filing a Complaint (ECF No. 1) against Defendants Brian Lasch and OnPoint Healthcare Solutions, Inc. ("OnPoint"). The Complaint brings seven claims including claims for breach of contract and misappropriation of trade secrets. (ECF No. 1 at 1).

1

On April 18, 2018, Oxford filed the Motion for Preliminary Injunction (ECF No. 13).

Oxford respectfully requests this Court issue a preliminary injunction during the pendency of this litigation:
(1) enjoining and restraining Defendants from soliciting any business, or initiating any contact or communication with any of Oxford's clients or customers whom Lasch served or whose name became known to Lasch while in the employ of Oxford;
(2) enjoining and restraining Defendants from accepting any business or account transfers from any of Oxford's clients or customers;
(3) enjoining and restraining Defendants from accepting any business from any client or customer whose records or information Defendants used in violation of their contractual and trade secret obligations to Oxford, including any client or customer whom Lasch may have contacted while in the employ of Oxford;
(4) enjoining and restraining Defendants from soliciting Oxford employees or independent contractors for the purpose of becoming employed by or affiliated with any business in competition with Oxford, including but not limited to OnPoint;
(5) enjoining and restraining Defendants from using, disclosing, or transmitting the information contained in the Oxford Database; and
(6) ordering Defendants to return to Oxford's San Diego office any and all records or information pertaining to Oxford's customers which were obtained from Oxford, including any trade secrets of Oxford or data taken from the Oxford Database.

(ECF No. 13-1 at 22–23). On May 15, 2018, Defendants filed an Opposition to the Motion for Preliminary Injunction. (ECF No. 16). On May 22, 2018, Oxford filed a Reply in Support of the Motion for Preliminary Injunction. (ECF No. 17). Neither party has requested an evidentiary hearing.

## II. Evidence Before the Court

Oxford submitted four pieces of evidence in support of the Motion for Preliminary Injunction. The first is a Protective Covenants Agreement executed by Lasch and Oxford (ECF No. 13-3) (the "Agreement"). Section 2.2(c) of the Agreement states

Employee agrees that, during the term of the Employee's employment with the Company, and for a period of twelve (12) months following the termination of Employee's employment, Employee will not, directly or indirectly, use the Company's trade secret information including, without limitation, the identity of the Company's customers or prospective customers,

the identities of their employees, contractors, and consultants, special needs, job orders, preferences, transaction histories, contacts, characteristics, agreements and prices to
> (i) solicit or seek to provide services to any customer for or on behalf of any entity engaged in or seeking to be engaged in Company's Business, or
> (ii) persuade, induce or attempt to persuade or induce any such entity to alter or reduce its use of services for the Company.

Section 6.2 of the Agreement states "Employee acknowledges and agrees that any breach of Section 1 or 2 of this Agreement will cause irreparable harm to the Company, for which a remedy in the form of damages will not be adequate or otherwise ascertainable."

The second document submitted with the Motion for Preliminary Injunction is a letter that Oxford sent to Lasch on February 6, 2018 reminding Lasch of his obligations under the Agreement. (ECF No. 13-4).

The third document submitted with the Motion for Preliminary Injunction is an Oxford Code of Business and Ethics that provides that employees may not "engage[] in a business or business activity that is in competition with or injurious to the Company" without the Company's approval. (ECF No. 13-5 at 6).

The fourth and final document submitted with the Motion for Preliminary Injunction is the Declaration of Anthony Cea, Oxford's Executive Vice President (ECF No. 13-6). Cea's Declaration discusses Oxford's proprietary information. Cea Decl. at ¶¶ 2–3.

> As Executive Vice President, I have personal knowledge of the "Oxford Process," which is Oxford's proprietary operations model . . . . The Oxford [P]rocess is comprised of, among other things, in-person training, on-line training, role-playing scenarios, daily and quarterly meetings, and specialized off-site training and development seminars for Oxford employees. . . . The specifics of the Oxford Process are highly confidential . . . .
> I also have personal knowledge of the "Oxford Database," which is Oxford's proprietary data storage method and facility. The Oxford Database is highly confidential and contains all Oxford customer data, marketing techniques, client lists, hiring practices, consultant lists, lead sheets, contracts, and other trade secret information necessary to implement the Oxford Process.

*Id.*

Cea's Declaration also discusses Lasch's time with Oxford and Lasch's access to Oxford's proprietary information. Cea Decl. at ¶¶ 5–6, 8.

> Oxford's parent corporation On Assignment first hired Defendant Brian Lasch in 2005 as a senior recruiter . . . . In his role as senior recruiter for Oxford, Lasch was responsible for locating potential consultants and placing them with Oxford's clients. Upon hire, Lasch immediately received extensive and specialized training in the Oxford Process and access to the Oxford Database.
>
> Lasch signed numerous Protective Covenant Agreements with Oxford throughout his employment, most recently on December 21, 2017. . . . Relying on Lasch's various agreements and obligations, Oxford trained Lasch in the Oxford Process, provided him with access to the Oxford database, continued to promote him, and granted him increasing levels of responsibility over the company's clients and operations. Lasch . . . [was] ultimately promoted to Vice President of Oxford's Healthcare Technology Recruitment department shortly before his departure from Oxford in January 2018.

*Id.*

Cea's declaration contains the following statements concerning Defendants' alleged improper acts:

> Unbeknownst to Oxford, Lasch planned and formed a directly competing entity, OnPoint . . . , while he was still employed by Oxford. Lasch incorporated OnPoint in August of 2017, . . . several months prior to Lasch leaving Oxford in January of 2018. . . .
>
> Lasch and OnPoint are in possession of the detailed proprietary information in the Oxford Database and concerning the Oxford Process and, upon information and belief, are using or will use such information to solicit customers, attract recruits, and build a competing entity at the expense of Oxford. The confidential information at issue includes, but is not limited to, Oxford's detailed customer practices, identified points of contact, summarized client business needs, market trends, client opportunities, detailed Oxford employee client notes from past visits, and Oxford's specified business plans for hundreds of San Diego customers.

Cea Decl. at ¶¶ 9, 14.

Defendants submitted the Declarations of Lasch (ECF No. 16-1) and Nathaniel Haros (ECF No. 16-2) with their Opposition to the Motion for Preliminary Injunction. Haros is a co-founder of OnPoint. Haros Decl. at ¶ 1. Lasch and Haros declared that they

4

have never used any of Oxford's confidential information, proprietary information, or trade secrets in creating, starting, or operating OnPoint. *Id.* at ¶ 6; Lasch Decl. at ¶ 6. Haros and Lasch also declared that they have never solicited any of Oxford's customers. Haros Decl. at ¶ 11; Lasch Decl. at ¶ 11.

### III. Standard of Review

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed. 1995)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). Plaintiffs may satisfy these four factors by using a sliding scale approach where "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

### IV. Discussion

Both the traditional and the "sliding scale" standards for preliminary injunctions require plaintiffs seeking a preliminary injunction to establish that they are likely to suffer irreparable harm in the absence of their requested injunction. *See id.*; *Winter*, 555 U.S. at 20. Oxford contends that, if the court denies the Motion for Preliminary Injunction, it will suffer irreparable harm in the form of "[t]he imminent use of [its] trade secret[s]," (ECF No. 13-1 at 20) and "a 'threatened loss of current and prospective customers and goodwill,'" *id.* at 19 (quoting *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*,

240 F.3d 832, 841 (9th Cir. 2001)).[1] Oxford also contends that the irreparable harm requirement is satisfied by the Agreement, *id.* at 20, which states that "any breach of Section 1 or 2 of this Agreement will cause irreparable harm to the Company." Agreement at § 6.2. Defendants contend that "Plaintiff fails to demonstrate any, let alone a clear, showing of immediate and irreparable harm." (ECF No. 16 at 14). Defendants contend that "Plaintiff's claims of threatened loss of prospective customers or goodwill are speculative because Plaintiff fails to provide any evidence [] of any of the alleged improper conduct it attributes to Defendants." *Id.* at 14–15. Defendants contend that the Agreement does not satisfy the irreparable harm requirement. *Id.* at 15–16.

"Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm." *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013). To satisfy the "likelihood of irreparable harm requirement," the moving party must establish (1) that is *likely* to suffer a certain harm and (2) that the harm that it is likely to suffer qualifies as *irreparable*. *Id.* "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (citing *Rent–A–Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)). "Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co.*, 240 F.3d at 841.

Oxford contends that, without its requested injunction, it will suffer irreparable harm in the form of "[t]he imminent use of [its] trade secret[s]," and "a threatened loss of current and prospective customers and goodwill." ECF No. 13-1 at 19–20 (quotations omitted). Defendants do not dispute that, if they were to use Oxford's proprietary information to

---

[1] Oxford does not contend that it will suffer irreparable harm from Defendants' future solicitation of Oxford employees. *See* ECF No. 13 at 19.

6

attract and service Oxford's customers, then Oxford would suffer a type of harm that qualifies as irreparable. *See* ECF No. 16 at 14–16.

However, Oxford also must establish that, without its requested injunction, it is likely to suffer the consequences that the parties agree amount irreparable harm. "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citing *L.A. Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980)). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Id.* at 674 (citing *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984)). In order for Oxford to establish that it likely will suffer irreparable harm in the form of "[t]he imminent use of [its] trade secret[s]," and "a threatened loss of current and prospective customers and goodwill," (ECF No. 13-1 at 19–20), Oxford must establish that Defendants likely will use Oxford's proprietary information to attract and service Oxford's customers if they are not enjoined from doing so.

Oxford contends that Defendants have used Oxford's proprietary information, specifically information concerning the Oxford Process and information contained in the Oxford Database, (ECF No. 13-1 at 15), and that they will do so in the future, (ECF No. 17 at 5). Defendants contend that Oxford has not established that Defendants have used Oxford's proprietary information or that they will do so in the future. (ECF No. 16 at 12).

The only evidence in the record that supports the conclusion that Defendants have used or will use Oxford's proprietary information is contained in the Declaration of Anthony Cea. *See* ECF Nos. 13-3 through 13-6. Cea declared that "Lasch used Oxford resources . . . while planning and incorporating his competing company OnPoint." Cea Decl. at ¶ 11. Cea also declared that "Lasch and OnPoint are in possession of the detailed proprietary information in the Oxford Database and concerning the Oxford Process, and, upon information and belief, are using or will use such information to . . . build a competing

7

entity . . . ." *Id*. at ¶ 14.  Cea does not provide any specific examples of Lasch using Oxford's proprietary information.

Cea's statements are directly contradicted by the Declarations of Lasch and Haros. Lasch declared

> The time I put in toward the formation of OnPoint as a corporation was done on my own time and none of Plaintiff's confidential, proprietary and trade secret information was used. . . . Furthermore, [Haros and I] have not used Plaintiff's confidential, proprietary and trade secret information in opening and operating OnPoint.

Lasch Decl. at ¶ 6.  Haros declared "At no time have I have used any of Plaintiff's confidential information, proprietary information, or trade secrets in creating, starting, and/or operating OnPoint Healthcare Solutions, Inc." Haros Decl. at ¶ 6.  Haros and Lasch also declared that they have never solicited any of Oxford's customers. *Id.* at ¶ 11; Lasch Decl. at ¶ 11.

Three aspects of Cea's statements concerning Defendant's use of proprietary information decrease their persuasive value.  First, Cea does not provide specific facts to support the conclusion that Lasch is using or will use Oxford's proprietary information. *See* Cea Decl.  Second, Cea's declaration is made partially on information and belief. *Id.* at 14; *see* 11A Charles Alan Wright, et al., Federal Practice and Procedure § 2949 (3d ed.) (April 2018 update) ("[W]hen the primary evidence introduced is an affidavit made on information and belief rather than on personal knowledge, it generally is considered insufficient to support a motion for a preliminary injunction.").  Finally, Cea's statements concern matters about which Cea appears to have no personal knowledge; Cea does not claim to have been present when Lasch and Haros founded and developed OnPoint. *See* Cea Decl.  On the other hand, Lasch and Haros declare that they have not used any of Oxford's proprietary information while developing OnPoint.  Haros Decl. at ¶ 6; Lasch Decl. at ¶ 6.

In light of the evidence submitted by Defendants and the aspects of Cea's statements that decrease their persuasive value, the Court finds that Oxford has not established that

8

Defendants are likely to use Oxford's proprietary information to attract and service Oxford's customers. *See K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088–89 (9th Cir. 1972) ("[A]ffidavits may afford the basis for a preliminary injunction but if the facts so appearing consist largely of general assertions which are substantially controverted by counter-affidavits, a court should not grant such relief unless the moving party makes a further showing . . . ." (citations omitted)). Consequently, Oxford has failed to establish that it is likely to suffer irreparable harm if the Court does not grant the Motion for Preliminary Injunction.[2]

## V. Conclusion

The Motion for Preliminary Injunction (ECF No. 13) is DENIED.

Dated: June 29, 2018

Hon. William Q. Hayes
United States District Court

---

[2] Oxford also contends that the irreparable harm requirement is satisfied by the Agreement, (ECF No. 13 at 20), which states that "any breach of Section 1 or 2 of this Agreement will cause irreparable harm to the Company," Agreement at § 6.2. This language addresses the second "likelihood of irreparable harm" requirement—that the harm at issue must qualify as irreparable—by providing that the harm caused by any breach of Section 1 or 2 qualifies as irreparable. The Agreement does not except Oxford from the first "likelihood of irreparable harm" requirement: establishing that Defendants will likely cause an injury that qualifies as irreparable (perhaps by breaching Section 1 or 2 of the Agreement). As discussed above, Oxford has not fulfilled that requirement.